IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FURR'S SUPERMARKETS, INC.
AND YVETTE GONZALES, TRUSTEE,

       **Plaintiffs/Appellees,**

vs.                                                                          No. CIV 03-1277 MCA/LCS

RICHARDSON & RICHARDSON, INC.,

       **Defendant/Appellant.**

### MAGISTRATE JUDGE'S PROPOSED FINDING AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Defendant/Appellant's Notice of Appeal from the decision of the Bankruptcy Court granting partial summary judgment in favor of Plaintiff/Appellee, filed November 5, 2003. (Doc. 1). This Court set a briefing schedule in this matter on January 8, 2004. (Doc. 9). Having considered Appellant's Motion for Leave to Appeal from Interlocutory Order and for Reversal of Bankruptcy Court Order, Appellee's Response thereto, all relevant law, and being otherwise fully advised, I recommend that Appellant's Motion be **GRANTED**.

       **I.**    **Standard of Review**

The standard for reviewing a bankruptcy court's grant of summary judgment is *de novo*, affording no deference to its decisions on questions of law. *In re Western Pacific Airlines, Inc.*, 273 F.3d 1288, 1290-91 (10th Cir. 2001) (citing *Woodcock v. Chem. Bank*, 144 F.3d 1340, 1342 (10th Cir. 1998)); *Key v. Liquid Energy Corp.*, 906 F.2d 500, 505 (10th Cir. 1990). A bankruptcy court's findings of fact will be rejected only if they are clearly erroneous. *Tulsa Energy, Inc. v. KPL Prod. Co.*, 111 F.3d 88, 89 (10th Cir. 1997). The parties to this action do

not challenge any of the factual findings of the bankruptcy court. Appellant argues instead, that the bankruptcy court incorrectly applied the law relating to mechanic's and materialmen's liens.

## II.     Factual Background

The essential facts of this case are not in dispute. On February 8, 2001, Furrs filed for bankruptcy under Chapter 11 of the Bankruptcy Code. During the preference period, Defendant Richardson & Richardson ("Richardson") performed construction services for Furrs under specific purchase orders and under contract with Furrs. Also during the preference period, Richardson received payments from Furrs for construction services performed at Furrs' stores.

On February 4, 2003, Furrs filed this adversary proceeding to avoid preferential transfers to Richardson in the amount of $236,911.37. The payments made by Furrs were in complete or partial satisfaction of debts owed by Furrs on stores 874, 875, 876, 879, 886, 894, 896, 897, and 905. In addition to the invoices paid by Furrs during the preference period, Richardson was owed additional amounts for work at stores 812, 868, 876, 877, 878, 879, 880, 885, 886, and 896 in the amount of $186,263.18.

After the bankruptcy filing, Richardson filed claims of liens on stores 812, 868, 874, 876, 877, 878, 879, 880, 883, 886, and 896 in the total amount of $186,263.18. Richardson filed a proof of secured claim, secured by the lien claims, on October 12, 2001. Furrs argues that Richardson is not secured in property of the estate, but this is a legal rather than a factual question.

Also following the bankruptcy filing, Furrs assigned stores 874, 875, 876, 877, 878, 879, 885, 886, 896 and 897 pursuant to an Order Approving Asset Purchase Agreement with Fleming Companies, Inc., dated July 3, 2001. Richardson argues that this transfer occurred pursuant to 11

2

U.S.C. § 363. Furrs argues that this transfer occurred pursuant to 11 U.S.C. § 365. During the bankruptcy, Furrs rejected its leases for stores 812, 868, 880, 894 and 905. All alleged preferential payments made to Richardson, with the exception of $435.33, were made prior to the date on which Richardson would have had to file its claim of lien to secure payments.

The lien claims filed by Richardson were timely filed and recorded. Pursuant to Court order, the claim of lien recorded by Defendant on store number 876 in the amount of $172,873.41 has been paid in full and released. This was accomplished by increasing the cure amount to the landlord and the payment was made to the landlord. Pursuant to the above-mentioned court order, the claim of lien recorded by Richardson on store number 879 has been paid in full and released. This also was accomplished by increasing the cure amount to the landlord, and the payment was made to the landlord. No other liens have been satisfied or released. Furrs did not own the property or buildings on which the work was performed, but instead leased the land and buildings, with the exception of store 885.

Appellant filed its Motion for Summary Judgment on July 7, 2003, alleging that it was a secured creditor in Appellee's properties and was entitled to recover in full the amounts owed it by Appellee. On October 14, 2003, the Bankruptcy Court entered its Opinion on cross-motions for Summary Judgment. The Bankruptcy Court held that under New Mexico law, Appellee's leaseholds constituted personal property and therefore were not subject to mechanic's and materialman's liens.

### III.    Propriety of Appeal as an Interlocutory Order from Bankruptcy Court

Appellee first contends that this Court lacks appellate jurisdiction to consider the Bankruptcy Court's grant of summary judgment. A District Court must have appellate

jurisdiction before it can address any of the issues in this case. Leave to hear appeals from interlocutory orders should be granted with discrimination and reserved for cases of exceptional circumstances.

Appellee further argues that this matter is not a reviewable interlocutory appeal. Title 28, Section 158(a) of the United States Code governs the jurisdiction of bankruptcy appeals. It provides in pertinent part: The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees; ... (3) with leave of the court, from other interlocutory orders and decrees. [T]o be final and appealable, the district court's order must end the litigation and leave nothing to be done except execute the judgment. *In re Buckner*, 66 F.3d 263, 265 (10th Cir. 1995) (quoting *In re Magic Circle Energy Corp.*, 889 F.2d 950, 953 (10th Cir. 1989)).

Additionally, Federal Rule of Bankruptcy Procedure 8003 provides for a motion for leave to appeal from an interlocutory order pursuant to 28 U.S.C. § 158. However, neither 28 U.S.C. § 158 nor the Bankruptcy Rules provide a specific standard for evaluating whether to allow interlocutory appeals; thus, district courts often utilize the standards governing appeals of interlocutory orders from district courts to courts of appeal pursuant to 28 U.S.C. § 1292(b). *In re Matter of Bertoli*, 58 B.R. 992, 993 (D.N.J.1986), aff'd, 812 F.2d 136 (3d Cir. 1987).

While the test for appeal under 28 U.S.C. § 1292(b) differs slightly from one appellate jurisdiction to another, generally it requires that 1) these orders must involve a controlling question of law as to which there is substantial ground for difference of opinion, and 2) the immediate resolution of the order may materially advance the ultimate termination of the litigation. *In re Sorrells*, 218 B.R. 580, 582 (10th Cir. BAP 1998) (quoting *Parsonette v.*

*Kennedy*, 204 B.R. 764, 769 (10th Cir. BAP 1997) (citing 28 U.S.C. § 1292(b)); 1 *Collier on Bankruptcy,* Section 3.03(d)(1). *See also, Raymond v. Mobil Oil Corp.,* 983 F.2d 1528 (10th Cir. 1993).

In the present case, I believe a reading of the cases and the New Mexico Statutes provides substantial ground for difference of opinion as to whether a mechanic's or materialmen's lien may attach to a leasehold interest in realty. Having reviewed the decisions of New Mexico's appellate courts, it is apparent that there has not been a decision on the precise issue at hand in this case.[1] I further find that a decision by this court on the merits may materially advance the ultimate determination of this case. *Id*. Therefore, I recommend that Richardson's Motion for Leave to Appeal the Interlocutory Order be **GRANTED**.

### IV.    Findings of United States Bankruptcy Court

In its Memorandum Opinion analyzing the parties' Cross Motions for Summary Judgment, the Bankruptcy Court found that, under New Mexico law, a leasehold constitutes personal property, not real property. The Court looked to a number of New Mexico cases in reaching this conclusion. *See e.g., Western Sav. & Loan Ass'n v. CFS Portales Ethanol I, Ltd.*, 107 N.M. 143, 144 (1988); *New Mexico ex rel. Truitt v. District Court of Ninth Judicial District, Curry County*, 44 N.M. 16, 29 (1939). The Bankruptcy Court further found that leaseholds constituted personal property even though they may be classified as real estate for the purposes of the real estate conveyancing statutes. Section 47-1-1 NMSA 1978 (1995 Repl.); *Resolution Trust Corp. v. Binford*, 114 N.M. 560, 569 (1992).

---

[1] *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Federal courts may rule on questions of state law where the issue has not been decided by the state courts or state legislature.

The Court further found that, under New Mexico law, mechanic's and materialmen's liens attach only to real property and not to personalty. The Court again looked to New Mexico case law in determining that "[t]he test of whether a lien attaches to a given article is whether it is a fixture or a permanent part of the building. [W]here the nature of the article is such that it is not to be permanently attached to the land, it probably remains personalty and not subject to a mechanic's lien." *Boone v. Smith*, 79 N.M. 614, 616-617 (1968). The Court also relied upon Section 48-2-4 NMSA 1978 and found that the title of this Section, "Lien covers improvements and land", suggests that a mechanic's lien attaches only to real property.

The Court then examined several of Appellant Richardson's arguments. It distinguished *Rio Grande Lumber & Fuel Co. v. Buergo*, 41 N.M. 624 (1937), on the grounds that the quotation referred to by Richardson was dicta[2] and because the central issue of the case concerned whether the lessee was, as a matter of law, an agent of the owner, rather than whether a lien could attach to a leasehold interest. The Court also distinguished *Albuquerque Lumber Co. v. Montevista Co.*, 39 N.M. 6 (1934), on the grounds that the case dealt with an executory vendor-vendee relationship rather than with leasehold interests. *Valley Transit Mix of Ruidoso, Inc. v. Miller*, 928 F.2d 354 (10th Cir. 1991) was distinguished because the liens in question were against the fee interest (rather than the leasehold interest) of the defendant.

Finally, the Court rejected Defendant's argument that Section 42-2-11 NMSA 1978 allows a mechanic's lien to attach to an interest other than an interest in real property. The Court also found that Defendant did not have a secured claim on Plaintiff's stores because Plaintiff did

---

[2] "Our conclusion is that only the lessee's interest was subject to the lien asserted unless the defendant (the fee owner) permitted his interest to become subject to the lien through failure to post a notice of nonresponsibility as provided by 1929 Comp. § 82-210. *Rio Grande Lumber*, 41 N.M. at 629.

not own any stores of the stores, except for store 885.

### V. Analysis

#### a. Nature of Leasehold Interests in New Mexico and the 1991 Amendments

The nature of leasehold interests in New Mexico was clear until the 1991 Amendments to the New Mexico Statutes. Until that time, as pointed out by the Bankruptcy Court, leasehold interests were considered personalty, rather than real property. *See Western Sav. & Loan Ass'n*, 107 N.M. at 144; *Truitt*, 44 N.M. at 29.

The 1991 Amendments to the New Mexico statutes cast doubt on the view that leasehold interests constitute personal property. Section 39-5-1.2 NMSA 1978, enacted by laws 1991, ch. 234 § 2, entitled, "'Real estate' and 'Real property' defined", states:

> *As used in Chapter 39, Article 5 NMSA 1978 "real estate" or "real property" includes leaseholds. As used in this section, "leasehold" means an estate in real estate or real property held under a lease.*

Also amended in 1991 was Section 47-1-1 NMSA 1978, 1991, ch. 234 § 3, entitled, "Real estate defined." This section reads:

> The term "real estate", as used in Chapter 47 NMSA 1978, shall be so construed as to be applicable to lands, tenements and heriditaments, including all real moveable property *and leaseholds. As used in this section, "leasehold" means an estate in real estate or real property held under a lease.*

The 1991 amendments added the italicized portions to the Acts.

The New Mexico Supreme Court had its first opportunity to discuss the 1991 amendments the following year in *Resolution Trust Corp. v. Binford*, 114 N.M. 560 (1992). *Resolution Trust* involved a collection and foreclosure action, styled as an equitable proceeding for foreclosure. Defendants Binford and Fritz were general partners of Crossroads West Limited Partnership,

7

which leased certain properties in downtown Albuquerque. *Id.* at 563. In 1984, Binford and Fritz signed a Crossroads note payable to American Federal Savings & Loan Association. *Id.* As security for the note, Binford and Fritz pledged their partnership interest in Crossroads and also granted a mortgage to American Federal on the leasehold. *Id.* American Federal later became insolvent and was placed in the receivership of Resolution Trust Corporation ("RTC"). *Id.*

Answering the collection action and foreclosure action brought by RTC, Binford and Fritz asserted that American Federal represented that it would never foreclose on the mortgage, although the mortgage was necessary to obtain title insurance. *Id.* Binford and Fritz conceded that, if leaseholds were included in the definition of real estate for purposes of the conveyancing statutes, a foreclosure on a lease could follow the same procedures as a foreclosure on real property. *Id.* at 568. They further argued, however, that the Court should require RTC to follow the procedures outlined in Article 9 of the New Mexico Uniform Commercial Code rather than pursuing the action as a foreclosure on real estate. The Supreme Court took this opportunity to discuss whether leaseholds were encompassed by the definition of real estate for the purposes of the conveyancing statutes. *Id.* at 569.

The Court explained that New Mexico courts have found leaseholds to be both personal property and interests in land. *Id.* "While the lease is personalty, the leasehold estate is an interest in land." *Id.* (quoting *Yrisarri v. Wallis*, 76 N.M. 776, 779 (1966)). The Court found that, in enacting Section 47-1-1 in 1991, the legislature did not intend to create a new category of property. Rather, the Court found that the legislature intended the phrase "real moveable property" to have substantially the same meaning as "chattels real." *Id.* "Chattels real" encompasses personal property that concerns the land. *Id.* (quoting *Truitt*, 44 N.M. at 30.)

In its holding, the Supreme Court found that property may only be divided into a certain number of categories: real property, personal property, or some combination of the two. *Id.* Most importantly, it held that, "[d]ue to the hybrid nature of leaseholds, *the issue is not whether a leasehold interest is real or personal property in the abstract, but whether it is real or personal property for the issue at hand.*" *Id.* [emphasis added]. The Court then found that RTC could foreclose on the leasehold interest, as on a foreclosure involving real property. With this holding in mind, I turn to an examination of the mechanic's and materialmen's statute and whether, in the context of these liens, leaseholds are subject thereto.

### b. History of Mechanic's and Materialmen's Liens

The first mechanics' lien statute in the United States originated in Maryland in 1791. Mechanics' liens are entirely created by statute and were unknown at common law. 32 U. Mem. L. Rev. 967, 972. Black's Law Dictionary defines a mechanic's lien as "A claim created by state statutes for the purpose of securing priority of payment of the price or value of work performed and materials furnished in erecting, improving, or repairing a building or other structure, and as such attaches to the land as well as buildings and improvements erected thereon." BLACK'S L. DICT., 6th ed. The New Mexico statute defines the lien as follows:

> A lien is a charge imposed upon specific property, by which it is made security for the performance of an act. Section 48-2-1 NMSA 1979.

Courts have generally held that, subject to the paramount title of the owner in fee and the conditions of the lease, a leasehold estate is subject to a mechanic's lien for an improvement

9

erected by or under a contract with the lessee.[3]  *See e.g., Ashville Woodworking Co. v. Southwick*, 119 N.C. 611, 26 S.E. 253 (1896)("We can see no reason why it [the lessee's interest] should not be liable to the attachment upon it of a mechanic's lien.  It can be levied upon and sold under execution.  The mechanic's lien is executionary in its nature, operation, and effect, and, like other attaching liens, it gives cause of action."); *Stoltz v. Honeycutt*, 42 S.W.3d 305 (Tex. App. Houston 14th Dist. 2001)("When a lessee contracts for construction, the mechanic's lien attaches only to the leasehold interest, not to the fee interest of the lessor."); 53 Am. Jur.2d Mechanics' Liens § 44; *See generally,* 42 A.L.R.2d 685 § 2(a).  Some statutes expressly provide that the lien extends to leasehold interests.  While the lien on the leasehold attaches only to the leasehold interest and not to the fee, the mechanic's lien attaches not merely to the improvement placed on the premises, but to the entire interest of the lessee in the leasehold and all the leased premises.  This is true in some jurisdictions even though the lessee has the right to remove the improvement which is the basis for the lien.  *Id.*

The legislative purpose supporting the development and adoption of mechanics' lien statutes was to secure priority of payment for the value of work completed and materials provided in building or repairing a structure and, as such, allowing the lien to attach to the land as well as

---

[3]*Gaskill v. Trainer*, 3 Cal. 334 (Cal. 1853); *Williams v. Vanderbilt*, 145 Ill. 238, 24 NE 476 (Ill. 1893); *National Lumber Co. v. Hobbs*, 74 Ind. App. 476, 129 N.E. 255 (Ind. Ct. App. 1920); *Basic Refractories v. Bright*, 72 Nev. 183, 298 P.2d 810 (Nev. 1956); *Crutcher v. Block*, 19 Okla 246, 91 P. 985 (Okla. 1907); *Schneider v. Delwood Center, Inc.*, 394 SW2d 671 (Tex. Civ. App. 1965); *Cornelius v. Washington Steam Laundry*, 52 Wash 272, 100 P 727 (Wash. 1909); *In re Fleetwood Motel Corp.*, 335 F.2d 863 (3rd Cir. 1964); *Clay v. Sandal*, 369 P.2d 890 (Alaska 1962); *Meek v. Parker*, 63 Ark.367, 38 SW 900 (Ark. 1897); *Archibald v. Iacopi*, 120 Cal App.2d 666, 262 P.2d 40 (Cal. Ct. App. 1953); *Horn v. Clark Hardware Co.*, 54 Colo 522, 131 P 405 (Colo 1915); *J.B. Ehrsam & Sons Mfg. Co. v. Rice*, 153 Kan 483, 112 P.2d 95 (Kan. 1941); *Basic Refractories v. Bright*, 72 Nev 183, 298 P.2d 810 (Nev 1956); *Schwartz & Co. v. Aimwell Co.*, 236 NY 672, 142 NE 330 (N.Y. 1923); *Blalack v. Hoshall's A&A Plumbing Co.*, 318 P.2d 878 (Okla 1957); *Stetson-Post Mill v. Brown*, 21 Wash 619, 59 P 507 (Wash 1899).

structures and improvements thereon. 32 U. Mem. L. Rev. 967, 973. Furthermore, the statute attempts to balance the competing interests of the landowner, who has the right not to have his property encumbered, and the direct or indirect lienor's right to be paid for labor and materials furnished in improving the owner's property. *Id.*

In New Mexico, the Mechanic's and Materialmen's Liens statute, Section 48-2-1 NMSA 1978, *et seq*. was intended to be remedial in nature and equitable in enforcement and therefore, should be liberally construed. *Lyons v. Howard*, 16 N.M. 327 (1911); *Hot Springs Plumbing & Heating Co. v. Wallace*, 38 N.M. 3 (1933); *Ford v. Springer Land Ass'n*, 8 N.M. 37 (1885), aff'd, 168 U.S. 51 513 (1897) ("The Courts of New Mexico are committed to the doctrine that 'the mechanic's lien law is remedial in its nature and equitable in its enforcement and is to be construed liberally'"). The object of the Mechanic's Lien Law in New Mexico is to protect those who, by their labor, services, skill or materials furnished, have enhanced the value of the property sought to be changed. *Hobbs v. Speigelberg*, 3 N.M. (Gild.) 357 (1885).

   **c.**  **Attachment of Mechanic's Liens to Leasehold Interests in New Mexico**

The sole question before this Court therefore is whether, in light of the 1991 amendments to §§ 39-5-1.2 and 47-1-1, the remedial nature of mechanic's and materialmen's liens in this state and the question posed in *Resolution Trust* of whether a leasehold constitutes real or personal property *for the issue at hand*, a mechanic's or materialmen's lien may attach to a leasehold interest. Ostensibly, this question has already been answered in New Mexico.

In *Rio Grande Lumber & Fuel Co. v. Buergo*, 41 N.M. 624 (1937), property held in fee simple was being leased by a third party. At the behest of the lessee, materials were provided and construction was completed on the property, at which time the contractors who had performed

11

the work brought suit to foreclose their lien against the owner in fee simple, but not against the lessee. *Id.*  The defendant objected to the establishment of any lien upon his property on the ground that, within three days after learning the lessee had begun repairs on the property, he posted a notice of nonresponsibility in accordance with 1929 Comp. § 82-210. *Id.* at 625.  The trial court so found, but based its theory of defendant's liability on the idea that the lessee, in making the repairs was the agent of the owner within the meaning of Section 82-202 (1929 Comp.) and that an owner may not relieve himself of liability for improvements which he himself ordered. *Id.*

The Court rejected the conclusion that the lessee was an agent of the owner and found, "[o]nly the *lessee's interest* was subject to the [materialman's] lien ... unless the [fee owner] permitted his interest to become subject to the lien through failure to post a notice of nonresponsibility as provided by 1929 Comp. § 82-210.  It is undisputed that the materials on account of which the lien is claimed were sold and charged to the lessee." *Id.* at 629. [emphasis added].  The fee owner's interest was not subject to the lien because he had posted a notice of nonresponsibility. *Id.* at 631.  Although the lessee in *Rio Grande Lumber* was not a defendant in the case, I do not find the Supreme Court's conclusion that the lessee's interest was subject to a mechanic or materialman's lien to be dicta.  Rather, I read the opinion as allowing such liens to attach to leasehold interests.

Even assuming that a leasehold interest will, for purposes of the mechanic's lien statute, constitute personal property or "chattels real", it does not follow that a mechanic's lien cannot attach to that interest.  Section 48-2-11 NMSA 1978 entitled, "Construction with knowledge of owner subject land to lien; notice by owner of nonresponsibility", states:

12

> Every building or other improvement mentioned in the second section [48-2-2] of this article .... shall be held to have been constructed at the instance of such owner or *person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this article.* [emphasis added].

The reference in 48-2-11 to "any interest claimed" suggests that, even if a leasehold constitutes personal property for the purposes of Chapter 48, the leasehold can still be subject to a mechanic's lien.

In *Resolution Trust*, the Court made an important and determinative finding with respect to the matter of leaseholds: that the courts must determine whether leaseholds constitute real or personal property for the *particular issue at hand. Id* at 569. [emphasis added]. I find that leaseholds should be viewed as real property for the purposes of Chapter 48 and the Mechanic's and Materialmen's Lien statute and thus are subject to the lien. In light of this holding, I conclude that mechanic's and materialman's liens may attach to leasehold interests in New Mexico. I reach this conclusion for at least two reasons.

As mentioned above, the purpose of mechanic's lien statute is remedial in nature and is meant to protect those who, in good faith, have enhanced the value of another's property. Moreover, that statute is to be liberally construed. When these policy interests are viewed in light of the 1991 amendments to §§ 39-5-1.2 and 47-1-1 *specifically providing* that leaseholds are real estate, and in light of the holdings in *Resolution Trust* and *Rio Grande Lumber*, I find that a mechanic's lien may attach to a leasehold interest in real property.

I recommend therefore that the decision of the Bankruptcy Court that a mechanic's lien cannot attach to a leasehold interest should be **REVERSED** and that this case be remanded to the Bankruptcy Court for further proceedings consistent with this opinion. I make this

recommendation solely on the issue raised as to whether mechanic's and materialmen's liens may attach to a leasehold interest in New Mexico. I do not reach any other issue discussed by the Bankruptcy Court or by the parties in their briefing of this matter.

Objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**